***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction over this matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Insurance coverage existed on the date of injury.
5. Plaintiff alleges that she sustained a compensable injury on June 9, 2008.
6. An employment relationship existed between plaintiff and defendant-employer during some or all of the time period stated in the previous paragraph.
7. Plaintiff's average weekly wage resulted in plaintiff receiving weekly compensation benefits in the amount of $786.00.
 ***********
The following were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement.
2. Stipulated Exhibit Number 2, Industrial Commission Forms, Medical Records and Discovery Responses.
 ***********
The following were received into evidence as:
 DEPOSITIONS
1. Oral deposition of Theodore Belanger, M.D., taken on February 2, 2010.
2. Oral deposition of Thomas Kern Carlton, M.D., taken on February 15, 2010, with Plaintiff's Exhibit Number 1 attached to the deposition transcript. *Page 3 
3. Oral deposition of John Welshofer, M.D., taken on March 9, 2010, with Defendants' Exhibit Number 1 attached to the deposition transcript.
 *********** ISSUES
1. Whether defendants' Form 24 Application should have been approved by the Executive Secretary's Office?
2. Whether Special Deputy Commissioner Emily Baucom erred and exceeded the scope of her jurisdiction and authority under Industrial Commission Rule 404 when she ordered defendants to provide specific medical treatment in a Form 24 Order?
3. Whether plaintiff is currently disabled?
4. Whether defendants have overpaid temporary total disability benefits, and if so, whether defendants are entitled to a credit for said overpayment?
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 33 years old. Plaintiff holds a Bachelor of Science degree in Business Management with a specialty in Human Resource Management. In 2008 and 2009, plaintiff took human resources classes at Central Piedmont Community College.
2. In 2001, Plaintiff was discharged from the United States Army after she completed her contract. While in the U.S. Army, plaintiff was a Petroleum Specialist and Retention Non-Commissioned Officer. *Page 4 
3. During her tenure in the U.S. Army, plaintiff sustained a meniscus tear to her knee, for which she underwent knee surgery. As a result of her knee injury, plaintiff currently receives monthly disability benefits from the U.S. Army. She will receive the disability benefits indefinitely. Plaintiff does not have any work restrictions as a result of her knee injury.
4. Prior to working for defendant-employer, plaintiff worked as a District Manager for Aldi, Inc. Plaintiff's job duties in the position with Aldi, Inc. included hiring, training, teaching, coaching, inventory, and conducting cash audits. The physical requirements of the job included stocking the store, operating the cash registers, making bales out of cardboard, taking out trash, scrubbing floors, cleaning, and transferring products from pallets to shelves, freezers and coolers. Plaintiff ended her employment with Aldi, Inc. in order to move to North Carolina to be closer to her family and help care for her mother.
5. On May 2, 2005, plaintiff was hired by defendant-employer as a Market Manager in the Durham market. Plaintiff's job duties included supervising the daily operations of each store under her jurisdiction. Plaintiff eventually transferred to supervise and manage the stores in the Charlotte market.
6. On June 9, 2008, plaintiff was traveling to a store she managed when she was cut off by another vehicle, causing her to slam into a guardrail on an exit ramp. Defendants accepted the claim plaintiff filed in connection with the accident as compensable by filing a Form 60.
7. On June 10, 2008, plaintiff sought initial medical treatment at Concentra Medical Center for complaints of left knee pain, low back pain and headaches with no loss of consciousness. X-rays of plaintiff's knee and lumbosacral spine were negative. Plaintiff was diagnosed with a lumbar strain, knee contusion, and face/scalp contusion, and was released to return to her regular activity. *Page 5 
8. Following her release, plaintiff continued to treat with Concentra, and was referred for physical therapy and given an MRI scan of the brain. The MRI did not show any findings to suggest hemorrhage or hematoma, and on July 7, 2008, plaintiff was discharged from Concentra's care with instructions to return on an as needed basis. Plaintiff was further instructed to continue her regular activity.
9. During the course of her treatment with Concentra from June 2008 until July 2008, plaintiff performed her normal job duties with defendant-employer.
10. Charles Congdon is Regional Director of Operations for defendant-employer. As Regional Director, Mr. Congdon manages all of defendant-employer's convenience stores in North Carolina and a portion of South Carolina. He is the direct supervisor of all nine Market Managers, and states that their primary duty is to supervise the day-to-day operations of each store in their market. The Market Managers have the option of performing physical work; however, they are not required to do so. Rather, the Market Managers have the authority to delegate physical work to the store managers and employees of a particular store.
11. On September 25, 2008, plaintiff met with Mr. Congdon, who informed plaintiff that she was being transferred from the Charlotte market to the Winston-Salem market. Plaintiff expressed her displeasure at being transferred, and voiced her concern about how the transfer would reduce her free time and the time she needed to care for her mother.
12. Plaintiff accepted the transfer position to the Winston-Salem market and traveled to Winston-Salem to meet with the existing Market Manager for the official turn-over of the position. Plaintiff traveled to each store in the market during her visit. Following her first visit, plaintiff neither returned to Winston-Salem to work as the Market Manager, nor did she contact defendant-employer regarding returning to work in any other capacity. *Page 6 
13. On October 2, 2008, plaintiff returned to Concentra with complaints of worsening headaches and low back pain, with sharp pains into the right leg, especially after driving or at the end of a shift. As a result of her continuing symptoms, an MRI scan was ordered, and a referral to a neurologist was recommended. On October 9, 2008, plaintiff followed-up with Concentra and was given work restrictions of no lifting greater than 20 pounds, no bending more than six times per hour, no pushing or pulling over 20 pounds, and no driving of the company's vehicle.
14. On October 13, 2008, an MRI scan of plaintiff's lumbar spine revealed a small central disc protrusion at the L5-Sl level.
15. On October 21, 2008, plaintiff presented to Dr. Theodore Belanger at OrthoCarolina. Dr. Belanger noted that plaintiff's lumbar MRI was benign with no specific injury to her spine. He opined that plaintiff's discomfort was muscular in nature and related to a strain. Dr. Belanger referred plaintiff back to physical therapy and placed a 20 pound lifting restriction on her activities.
16. On November 11, 2008, Dr. Belanger recommended nerve conduction studies and assigned work restrictions of no lifting greater than 20 pounds, no prolonged bending, stooping, squatting, kneeling or twisting, and no driving for more than one hour.
17. On January 13, 2009, Dr. Belanger reviewed the results of the EMG and nerve conduction study, which did not reveal any evidence of central or peripheral neurologic abnormality. Dr. Belanger noted that plaintiff, "continues to display exaggerated illness behavior with dramatic pain response to non-physiological touch of the lower back." Based on his review of the MRI, x-rays, and EMG and nerve conduction study of the lower extremities, as well as plaintiff's lack of success with physical therapy, Dr. Belanger opined that he could offer plaintiff no further medical treatment. Dr. Belanger recommended that plaintiff undergo a *Page 7 
Functional Capacity Evaluation and obtain a second opinion. He also continued plaintiff's previous work restrictions.
18. On March 24, 2009, plaintiff returned to Dr. Belanger, who noted there were no significant changes from her last evaluation. Dr. Belanger opined that plaintiff had reached maximum medical improvement, and that he would release her from his care after receiving the results of the Functional Capacity Evaluation. Dr. Belanger also continued plaintiff's work restrictions until receipt of the Functional Capacity Evaluation.
19. In May 2009, plaintiff began treating with Dr. T. Kern Carlton for pain management. Dr. Carlton diagnosed plaintiff with a lumbar strain, concussion and central disc protrusion. He noted that plaintiff reported three out of the five Waddell signs, which suggested a psychological component to her condition. On June 4, 2009, Dr. Carlton recommended that plaintiff participate in the Functional Restoration Program, which has not been approved by defendants.
20. In June 2009, plaintiff was terminated by defendant-employer for failure to return to work from medical leave.
21. On July 7, 2009, plaintiff underwent a Functional Capacity Evaluation which revealed that she was capable of lifting up to 35 pounds occasionally from floor to waist, waist to shoulder, and floor to shoulder, and carrying up to 35 pounds occasionally. It was noted that plaintiff was capable of pushing and pulling up to 45 pounds of force. The report indicated that plaintiff displayed consistent effort throughout her Functional Capacity Evaluation.
22. On July 21, 2009, Dr. Belanger released plaintiff from his care and assigned a five percent permanent partial disability rating to her back. He also assigned permanent work restrictions as outlined in the Functional Capacity Evaluation. *Page 8 
23. On October 14, 2009, plaintiff returned to Dr. Carlton reporting worsening symptoms in her right leg. Dr. Carlton recommended a right epidural steroid injection. On November 13, 2009, Dr. Carlton recommended a referral for an evaluation with a spine surgeon to determine whether plaintiff was a surgical candidate. During his treatment of plaintiff, Dr. Carlton placed her on light duty restrictions which included lifting 20 pounds occasionally.
24. On January 28, 2010, plaintiff presented to Dr. John Welshofer, a physical medicine rehabilitation specialist, for a second opinion evaluation. Dr. Welshofer recommended repeating an MRI scan of the lumbar spine, and an EMG and nerve conduction study.
25. Dr. Welshofer interpreted the MRI scan to reveal a desiccated disc with central disc bulge at L5-S1. The EMG and nerve conduction study showed evidence of paraspinal muscle denervation, which revealed that there was some nerve irritation coming out of the low back. Based on the findings of the MRI and EMG, Dr. Welshofer opined that plaintiff's sitting intolerance was related to pressure in the disc in the low back. Dr. Welshofer recommended an evaluation with a neurosurgeon, specifically Dr. Adamson, to determine whether plaintiff was a surgical candidate.
26. Dr. Belanger reviewed the Market Manager position which defendants offered to plaintiff in the Winston-Salem market. He opined that he did not see any objective reason why plaintiff could not perform her normal job duties from October 2008 forward, so long as she was not required to lift more than 35 pounds.
27. Dr. Carlton also reviewed the Market Manager position which defendants offered to plaintiff in the Winston-Salem market. Dr. Carlton opined that, if plaintiff was not required to lift greater than 20 pounds occasionally, and if she was permitted to take short breaks from *Page 9 
sitting during her one and one-half hour drive from Charlotte to Winston-Salem, and during her travel to the stores in her market, then the position was suitable employment.
28. Dr. Welshofer opined that plaintiff was not medically restricted from driving. He noted that prolonged sitting could increase her back symptoms and recommended that she take short breaks during her travel between Charlotte and Winston-Salem. Dr. Welshofer further opined that, so long as plaintiff was not required to lift more than 20 pounds, the Market Manager position in Winston-Salem was a suitable position for her.
29. Based upon the totality of the credible evidence of record, the Full Commission finds as fact that the Market Manager position in the Winston-Salem market offered to plaintiff by defendant-employer, and approved by her treating physicians, fell within her permanent restrictions. Plaintiff did not make a reasonable effort to return to the Market Manager position in Winston-Salem. Therefore, plaintiff's refusal of this position was not justified.
30. Based upon the totality of the credible evidence of record, plaintiff has failed to prove that any disability or inability to earn wages subsequent to her termination from employment with defendant-employer is related to her compensable June 9, 2008 injury by accident.
31. As a result of her injury by accident on June 9, 2008, plaintiff sustained face/scalp contusions, however, said injury did not result in any facial disfigurement.
32. Special Deputy Commissioner Emily Baucom was well within her designated authority when she ordered defendants to provide plaintiff with a second opinion evaluation with Dr. Welshofer in her Administrative Order denying Defendants' Form 24 Application.
 *********** *Page 10 
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On June 9, 2009, plaintiff sustained an injury by accident arising out of and in the course of employment with defendant-employer when she was involved in an automobile accident while traveling to a store she managed for defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The medical evidence, including the testimony of Drs. Belanger, Carlton and Welshofer, establishes that the Market Manager position in Winston-Salem was a suitable position for plaintiff. Therefore, plaintiff unjustifiably refused to return to her job, which was suitable employment available to her, when she stopped reporting to work following her initial visit to the stores in the Winston-Salem market. Plaintiff is not entitled to any compensation at any time during the continuance of such refusal. N.C. Gen. Stat. § 97-32.
3. Defendants are entitled to a credit against disability benefits owed to plaintiff for an award of permanent partial disability rating to the back, and for their payment of temporary total disability compensation since the filing of their Form 24 Application to Suspend or Terminate Compensation on August 28, 2009. N.C. Gen. Stat. § 97-42; Workers' Compensation Rules of the North Carolina Industrial Commission Rule 404(8).
4. As a result of her injury by accident on June 9, 2008, plaintiff sustained face/scalp contusions. However, said injury did not result in any facial disfigurement, and, therefore plaintiff is not entitled to compensation for serious facial or head disfigurement pursuant to N.C. Gen. Stat. § 97-31(21). *Page 11 
5. As a result of her compensable injury, plaintiff has received medical treatment and is entitled to receive further medical treatment which would effect a cure, give relief, or lessen her period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. Plaintiff is entitled to an evaluation with a neurosurgeon to assess her candidacy for surgery or other reasonably necessary medical treatment, and for a second opinion regarding her permanent partial impairment rating to the back. N.C. Gen. Stat. § 97-25.
6. Pursuant to N.C. Gen. Stat. § 97-77, the Chair of the Industrial Commission has the authority to designate specific administrative authority to Special Deputy Commissioners of the Executive Secretary's Office. The Chair has specifically designated to Special Deputy Commissioners, the authority to enter "Orders concerning medical and vocational rehabilitation services when those matters are involved with respect to the termination or suspension of compensation." Therefore, Special Deputy Commissioner Emily Baucom was well within her designated authority when she ordered defendants to provide plaintiff with a second opinion evaluation with Dr. Welshofer in her Administrative Order denying Defendants' Form 24 Application.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is not entitled to payment by defendants of any disability compensation after August 28, 2009, and compensation shall be suspended so long as plaintiff continues to refuse to accept suitable employment offered by defendant-employer. *Page 12 
2. Defendants are entitled to a credit against the award for the permanent partial disability rating to the back, and for defendants' payments of temporary total disability compensation made since August 28, 2009.
3. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury, including but not limited to an evaluation by a neurosurgeon and for a second opinion regarding her permanent partial impairment rating to the back, when bills for the same have been submitted according to proper Industrial Commission procedure.
4. Should plaintiff be entitled to any further disability benefits, a reasonable attorney's fee of 25% of said amount due plaintiff is approved for plaintiff's counsel and shall be paid by defendants as follows: 25% of the accrued compensation due plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to plaintiff's counsel.
5. Defendants shall bear the costs.
This the 26th day of February, 2011.
 S/_____________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/__________________ DANNY LEE McDONALD COMMISSIONER *Page 1